22189

SOUTH CAROLINA DEPARTMENT OF HIGHWAYS AND PUBLIC
TRANSPORTATION, Respondent, v. Burwell D. MANNING, Jr., East-
ern Corn and Grain Company, Inc. and Farmers Home Administration,
Mortgagee, et al., Appellants. (three cases).

(323 S. E. (2d) 775)

Supreme Court

*W. Thomas Vernon* and *Kermit S. King*, of *King, Vernon & Gambrell, P.A.*, for *appellants.*

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen. Daniel R. McLeod, Asst. Atty. Gen. M. Richbourg Roberson*, and *William F. Austin, A. Camden Lewis* and *Keith M. Babcock*, of *Austin & Lewis*, Columbia, *for respondent.*

Heard Oct. 2, 1984.

Decided Nov. 27, 1984.

*Per Curiam:*

In this condemnation case the South Carolina Department of Highways and Public Transportation, Condemnor-Respondent, has required for public use four parcels of land owned by Burwell D. Manning, Jr. From an award of $446,951 made by a jury after a trial *de novo* the landowner has appealed. We affirm.

On May 25, 1979, the Department served the landowner with Notice of Condemnation as permitted by § 57-5-320 of the *Code of Laws of South Carolina* (1976). The Code section allows the Department to "... acquire an easement or fee simple title to real property by gift, purchase, condemnation or otherwise as may be necessary...". For the purpose of condemnation proceedings, § 57-5-390 permits the governor to appoint a list of citizens eligible to serve on condemnation boards for the purpose of appraising and offering to landowners compensation for realty to be acquired. Section 57-5-400 permits the Department to designate from this group three or more individuals to serve for the purpose of appraising and making awards for particular parcels of real estate. Section 57-5-430 directs the Department to give to the landowner fifteen days notice in writing of its intention to condemn. Section 57-5-480 reads as follows:

> At any hearing before a condemnation board all persons interested shall have the right to introduce testimony and to be heard in argument upon the matter of compensation and damages. After hearing the evidence and arguments, the board shall render its decision by resolution. *The board shall furnish copies of the resolution to the owner and to the Department. The resolution shall contain a statement that any appeal by the landowner shall be served by mail or otherwise upon the Department within twenty days after the receipt of the resolution in accordance with the provisions of § 57-5-500.* (Emphasis added.)

Section 57-5-500 permits either the landowner or the Department to:

> ... appeal to the court of common pleas from a decision of the board. *Notice and grounds of appeal shall be served by mail or otherwise upon the Department within twenty*

*days after the receipt of the resolution of the condemnation board.* The clerk of court shall docket such appeals on calendar number one, and they shall be heard in said court *de novo* before a jury, unless the right to jury trial be waived, as in other cases provided by law. (Emphasis added.)

A Board of Condemnation was appointed by the Department to act on the property involved here and met first on June 12, 1979. All necessary parties were present for the hearing. Routinely, at the end of board meetings, board members agree upon an award and sign a blank resolution which is handed to Mr. Holstein who acts as aid to the board and who is Right-of-Way Engineer for Acquisition and is a regular employee of the Department. The resolution containing the money award is then served on both the Department and the landowner.

On June 12th, the board members signed such a resolution and told Mr. Holstein to fill in the blanks with the appraised value and the award of $1,600,000. Rather than comply with these instructions, Holstein conferred with Chief Commissioner Cobb of the Department and with Attorney Vic Evans of the Office of the Attorney General. They were concerned that such an award might adversely affect federal highway fund contributions.

They called the three board members back into session on June 14th. At this meeting the landowner was not present nor was he represented. Obviously at the instigation of Holstein, Cobb and Evans, an award was made in the amount of $619,000. Holstein completed the new resolution and it was served upon the landowner and on the Department in routine fashion.

The landowner learned of the second meeting and protested. He obviously became aware of the broad discrepancy between the $1,600,000 figure and the $619,000 figure. A third meeting of the board was held on August 7, 1979, at which all parties were in attendance. The board admitted the illegality of its action and agreed to reinstate the original amount of $1,600,000 as being just compensation for the condemned parcels. This resolution was served on both the landowner and the Highway Department. The Department on August 15, 1979, filed its Notice of Intention to Appeal.

## I.

This appeal by the Department placed the matter within the jurisdiction of the Court of Common Pleas for a trial *de novo* before a jury. In that Court, the landowner protested jurisdiction. It was his contention that if the Department wanted to appeal, it had to appeal the award agreed to by the members of the board on June 12, 1979, within twenty days of that date. The issue was referred to the Master-In-Equity and ruled upon by the Honorable Paul M. Moore, Circuit Judge. He ruled that inasmuch as no resolution had been served upon the Highway Department or upon the landowner growing out of the meeting of June 12, 1979, the time for appealing had not commenced to run. He further held that the Department timely appealed from the $1,600,000 resolution growing out of the meeting of August 7, 1979. Exceptions were taken to his Order and preserved for appeal after the trial *de novo*. We hold that Judge Moore ruled correctly.

Orderly procedure requires that there must be a time ▪▪ from which the right of appeal starts to run. The time is established by § 57-5-500 which we have quoted herein. The landowner contends that the Department through Mr. Holstein knew of the award of June 12th. The landowner further contends that such knowledge was the equivalent of service upon the Department of the resolution which was authorized but never completed. In view of the statute, we think the argument is without merit. Until the resolution is actually served, the time for notice of appeal does not begin to run. *South Carolina Highway Department v. Wessinger*, 235 S. C. 239, 111 S. E. (2d) 13 (1959).

We now reach the issues raised incident to the trial *de novo* conducted by Circuit Judge James E. Moore.

## II.

The landowner takes exception to the court's refusal to ▪▪ strike the testimony of Thomas Dyke, an expert witness who testified on behalf of the Department. He is an Urban Planner, Land Planner, Landscape Architect and zoning expert from Illinois. The basis of the objection to the witness's testimony is the fact that he was not a licensed landscape architect in South Carolina under the provisions of § 40-28-20 of our Code. The qualifications of an expert is

largely a matter of discretion of the trial judge. *Prince v. Associated Petroleum Carriers*, 262 S. C. 358, 204 S. E. (2d) 575 (1974). We find no error.

## III.

Counsel for the landowner offered land-value testimony by Matthews, Minner and Perry who served as members of the Board of Condemnation and who initially made an award of $1,600,000, then an award of $619,000, and in the last analysis $1,600,000. The testimony which they would have given if permitted was based on conclusions arrived at as a result of testimony they heard as members of the Condemnation Board. As members of the board, they served somewhat like a jury. Certainly a juror would not become an expert on any appeal by reason of the fact that he participated in a jury verdict. These proffered witnesses had made no independent appraisal of the properties involved. At most they could only give appraisal values based on what other witnesses told them at the hearing. The trial judge properly excluded their testimony. We do not reach the question of whether a board member may ever participate in a trial *de novo* involving an appeal from an award of a board on which he sat.

## IV.

Section 57-5-470 provides that benefits to other property derived by reason of the construction project shall be taken into consideration in determining the amount of compensation, if any, to be awarded a landowner. At the end of all of the evidence, counsel for the landowner asked the judge to hold as a matter of law that no benefits had been shown. His request was denied. Exception has been taken to that ruling. The granting of the motion would have been in order only if the evidence was susceptible of no other reasonable inference. A review of the testimony, especially that of witness Norwood, reveals that there was ample evidence to go to jury on this issue. We find no error.

## V.

The trial judge gave the conventional charge traditionally used in Highway Department condemnation cases in this

state. Counsel for the landowner requested the judge to charge his requests numbered seven and nine which read as follows:

(7) I charge you that, in making your determination as to the amount of monetary consideration to be awarded the landowner, you are to consider the existence of sand, clay, gravel or granite deposits which are in the area to be taken by the Highway Department and include those values in determining the monetary consideration to be awarded the landowner.

(9) I charge you that a landowner who is familiar with his property and its value may give his opinion relative to the value of his land and the damage thereto. In the event his land contains sand, clay, gravel, granite or other saleable materials, the landowner may give his opinion as to the value of his land taken based upon the existence of these materials in the land, and you are to take all of those factors into consideration in arriving at your value figure.

There was abundant evidence relative to sand, clay, gravel and granite deposits and the presence of these were proper for consideration in determining a reasonable fair market value but to have the judge point them out tends to overly emphasize this aspect of the valuation. It was more properly a matter for argument of counsel to the jury than for comment by the judge.

The landowner testified. In similar fashion, to call to the attention to the jury the fact that his testimony should be considered would have overly emphasized this witness's testimony. The fact that the landowner was allowed to give his opinion speaks for the proposition that it could be considered. We have often held that the judge's instruction is to be considered as a whole. When the charge is considered as a whole, there is patently no error.

## VI.

The landowner next contends that the trial judge erred in denying his motion for a new trial outright or a new trial *nisi*. He argues the verdict was not supported by evidence as some of the exhibits were missing from the jury

room during deliberations. The forelady of the jury advised the judge that three photograph exhibits were missing. They were never found. The landowner did not ask for a mistrial and acquiesced in the continued deliberation of the jury after learning of the missing exhibits. No exceptions were noted in the record. The trial judge concluded, and we agree that the photographs, which were of some comparable properties used by a witness as a basis for his appraisal, did not deprive the landowner of a fair trial. We find no error.

We also hold no error on the part of the judge for refusing a new trial *nisi*. The award of the jury was well within the bounds of the high and the low appraisal testimony.

## VII.

As required by our statute, § 57-5-490, the Department was required to tender payment for the amount fixed by the board. After the jury verdict, the Department filed a motion which sought an order directing judgment against the landowner in the amount of $1,153,099 representing the difference between the award of the jury and that of the board. The motion was granted allocating different amounts to the separate parcels of land. This was done because separate mortgage holders held liens against the various parcels. Counsel argues that the judge erred. We disagree. The cases were consolidated by the trial judge resulting in a consolidated verdict. The judge determined the proportionate relationship of the prior administrative awards to the total award and entered judgment against the recipients of these administrative awards in the amount of the overage which was proportionate to their share of the original award. We hold this to be an appropriate handling of the matter. The effect of the judgments ordered is to cause the landowners and the respective mortgage holders to reimburse the Department for money due it.

Affirmed.